**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

RONALD CONNER,

      Movant,

v.                                              Civil Action No. 2:03-cv-02261
                                                (Criminal No. 2:02-cr-00226-03)

UNITED STATES OF AMERICA,

      Respondent.

**PROPOSED FINDINGS AND RECOMMENDATION**

By Standing Order, this matter was referred to the undersigned United States Magistrate Judge to make proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is Movant's Motion to Vacate, Set Aside and Correct Sentence, pursuant to 28 U.S.C. § 2255, filed on October 16, 2003. (Docket sheet document # 205).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On October 8, 2002, movant Ronald Conner (hereinafter "Defendant") was indicted on one count of conspiracy to distribute more than five grams of cocaine base as stated in Count One of a two-count superseding indictment filed in the United States District Court for the Southern District of West Virginia. (# 7).

Defendant was initially represented by court-appointed counsel, J.C. Powell. On December 9, 2002, Defendant pled guilty to Count One of the superseding indictment (# 75), pursuant to a

written plea agreement (# 76).  At the plea hearing, the court provisionally accepted Defendant's guilty plea and directed the preparation of a Presentence Report (PSR).  The court scheduled a sentencing hearing for February 25, 2003 in Charleston.  (# 108).

On March 2, 2003, the United States filed a motion to continue the sentencing hearing.  (# 132).  On March 28, 2003, the court granted the motion to continue and rescheduled the sentencing hearing for April 9, 2003.  (# 133).

On March 28, 2003, however, Defendant filed a <u>pro se</u> motion to withdraw his guilty plea.  (# 134).  Then, on April 7, 2003, Mr. Powell filed a motion to withdraw as counsel for Defendant.  (# 141).  On April 15, 2003, the court held a hearing on Mr. Powell's motion to withdraw as counsel.  The court granted the motion and appointed Troy N. Giatras to represent Defendant.  (# 152).  The court also continued generally Defendant's sentencing hearing. (<u>Id.</u>)

On July 16, 2003, a hearing was held on Defendant's motion to withdraw his guilty plea.  By Order dated July 25, 2003, the court denied the motion to withdraw the guilty plea, and set Defendant's sentencing for August 21, 2003.  (# 190).

In the PSR, the probation officer recommended that Defendant be held accountable for 107.8221 grams of cocaine base, which produced a base offense level of 32.  The probation officer also recommended a two-level enhancement for possession of a firearm,

but did not recommend an adjustment based upon Defendant's lesser role in the conspiracy.   The probation officer also recommended a two-level enhancement for obstruction of justice based upon Defendant's false testimony before a grand jury prior to his indictment.   The probation officer did not recommend a reduction for acceptance of responsibility.   Thus, Defendant's recommended total offense level was 36.

The probation officer further determined that Defendant should receive one criminal history point for his conviction for failure to provide child support, as imposed by the Braxton County magistrate court, and further recommended that an additional two points be added to Defendant's criminal history score because he committed the offense of conviction while on probation for the Braxton County conviction.   Thus, Defendant's criminal history score of three resulted in a Criminal History Category of II. Coupled with a total offense level of 36, Defendant's recommended Guideline range of imprisonment was 210-262 months.

At the sentencing hearing held on August 21, 2003, the court considered Defendant's numerous objections to the PSR.   The court determined that Defendant's degree of relevant conduct had been overstated.   The court attributed 94 grams of cocaine base to Defendant, which kept his base offense level at 32.   (# 222, Ex. B at 54).   Because the court also found that Defendant was entitled to a two-level reduction for having a minor role in the offense,

pursuant to USSG § 2D1.1(a)(3), Defendant's base offense level was reduced to 30, and the minor role adjustment reduced his offense level to 28.  (<u>Id.</u> at 57, 63-64).

The court applied the obstruction of justice enhancement (plus two levels), but determined that Defendant was not responsible for the firearm found in a motel room that he had rented for one of the co-conspirators.  (<u>Id.</u> at 55-56).  Despite the fact that the court found that Defendant had obstructed justice, and notwithstanding Defendant's unsuccessful attempt to withdraw his guilty plea, the court found that Defendant was entitled to a three-level reduction for acceptance of responsibility.  (<u>Id.</u> at 57-59).

Based upon these findings, Defendant's total offense level was reduced to 27, and his Guideline imprisonment range was determined to be 78-97 months.  The court imposed a sentence of 84 months. Defendant was also sentenced to a four-year term of supervised release, and a special assessment of $100.  (<u>See</u> Judgment in a Criminal Case, # 196).

Defendant did not appeal his conviction or sentence to the United States Court of Appeals for the Fourth Circuit.  Rather, on October 16, 2003, Defendant filed the instant Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255.  (# 205).  Defendant asserts that his original appointed counsel, J.C. Powell, misinformed him regarding the potential consequences of the plea and coerced him into accepting the terms of the plea agreement with "rapid fire

4

questions and coaxing." (Id. at 4, Grounds One and Two). Defendant further asserts that his conviction was obtained in violation of his right against self-incrimination and that his conviction violates the Double Jeopardy Clause. (Id. at 4-5, Grounds Three and Four).

On December 5, 2003, the United States filed a Response to the Motion to Vacate, contending that Defendant procedurally defaulted on each of his claims for collateral relief and that, nonetheless, each of his claims lacks merit. (# 222).

On January 14, 2004, Defendant filed a document entitled "Amendments to Motion to Vacate Sentence." (# 224). In this document, Defendant states that his claim concerning his Criminal History Category, which was couched as a violation of the Double Jeopardy Clause, was inappropriately stated. Rather, Defendant claims that his criminal history is exaggerated. Defendant asserts that he has no prior history of imprisonment and that his role in this conspiracy was limited to procuring motel rooms and vehicles for the distributors of the drugs. Defendant further contends that a reduction to a Criminal History Category of I would make him eligible for the Safety Valve under USSG § 5C1.2. (# 224 at 1-2). Defendant also seeks an additional 2-level reduction, pursuant to USSG § 3B1.2, for having a minimal, rather than a minor, role in the conspiracy. (Id. at 2).

On April 19, 2004, the undersigned granted Defendant leave to amend his section 2255 motion, and ordered the United States to file a supplemental response addressing the amended claims. (# 230). On May 19, 2004, the United States filed a Response to Defendant's Supplemental Motion to Vacate Sentence, asserting that Defendant did not request that his counsel file an appeal during the applicable 10-day period, and reiterating that Defendant procedurally defaulted on each of his claims for collateral relief. (# 235). On June 1, 2004, Defendant filed a Traverse to the United States' Supplemental Response. (# 238).

On June 29, 2004, Defendant filed a motion for leave to again amend his section 2255 motion, in which he asserts that the United States Supreme Court's decision in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (June 24, 2004), "has a direct and material impact upon the sentence which the court imposed." (# 239). In <u>Blakely</u>, the Court reversed the sentence of a defendant convicted in the State of Washington on the basis that his sentence was in excess of the statutory maximum, and was based upon findings rendered by the sentencing court that were not presented to a jury or proved beyond a reasonable doubt.

Based upon <u>Blakely</u>, Defendant claims that "any enhancement, whether to Base Offense Level or Criminal History Category, can not be authorized by that of a judge's act alone to boost a defendant's sentence based on fact or behavior that were not presented before

6

a jury." (# 239). He further states, "[t]he defendant concludes that other than what he made plea to is all that should be rendered to sentence . . . ." (Id.) The Blakely Court, however, did not address whether the decision applied to the United States Sentencing Guidelines.

On January 12, 2005, the Supreme Court decided United States v. Booker, and United States v. Fanfan, 125 S. Ct. 738 (Jan. 12, 2005), which reaffirmed the Court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000), applied the holding in Blakely to the United States Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. The Booker holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting Griffith v. Kentucky, 479 U.S. 314, 328 (1987)).

This matter is now ripe for determination. The undersigned will first address the issue concerning the denial of a direct appeal, and will then turn to Defendant's other claims for relief.

## ANALYSIS

**A.   Denial of Direct Appeal.**

The undersigned has construed the amendments to Defendant's section 2255 motion to include a claim of ineffective assistance of counsel based upon the failure to file a direct appeal upon request. (# 224 at 2).  The failure of a criminal defense attorney to file a direct appeal when so requested by the defendant constitutes <u>per</u> <u>se</u> ineffective assistance of counsel.  <u>United States v. Peak</u>, 992 F.2d 39, 42 (4th Cir. 1993).  The remedy for such a violation is to vacate the judgment and re-enter it to allow a new period for appeal.  (<u>Id.</u>)

In the amendments to his motion, Defendant states that, in correspondence to his second appointed counsel, Troy Giatras, he addressed the issues concerning the alleged overstatement of his criminal history and the denial of a sentencing reduction for a minimal role in the offense and requested that an appeal be filed. (# 224 at 2).

A review of the correspondence placed in the record by the United States indicates that Mr. Giatras wrote a letter to Defendant on August 25, 2003, which states:

> The purpose of this letter is to inform you that the Court has sentenced you to 84 months along with four (4) years of supervised release.  Within the next several days you will receive a Judgment Order outlining all the terms and conditions of your sentence.  In the event that you wish to appeal this sentence, you must inform me within ten (10) days of the date of your sentencing, which was on August 21, 2003.  If I do not hear from you,

8

I will assume that you do not wish to appeal your sentence.

(# 235, Ex. B).  That same day, Defendant wrote a letter to Mr. Giatras, which states in pertinent part:

> Hello, I know now we did what we had to do and it paid off.  I'm greatful [sic; grateful] for your services.  Only one problem with all that came down to fineal [sic; final] sentence, the bottom line is incorrect.
>
> Having started at base offence level 30 with a 2 point enhancement, takes it to 32 minus 4 points for minimal role comes to level 28, and from there a 3 point reduction for acceptance of responsibility leaves it at a bottom line of 25 <u>not</u> 27.

(# 235, Ex. A).

The United States also provided a copy of an email sent to Mr. Giatras by a family member of Defendant, Dave Conner, on August 28, 2003, which states:

> Ron called regarding sentencing, he thinks starting base level was 30 + 2 points obstructing justice = 32 - 4 pts minimal role = 28 - 3 pts accept responsibility = 25 pt level.
>
> It might be that 2 pts was added for parole violation for child support?
>
> Ron wanted me to contact you to check and see if he should have level 25 or should it be level 27?  He said he only had til Sunday to respond.

(<u>Id.</u>, Ex. A).

Attached to the first amendment to Defendant's section 2255 motion, is an August 29, 2003 letter from Mr. Giatras to Defendant which states as follows:

      The purpose of this letter is to inform you that we will not be filing a Motion to appeal with respect to your sentencing since you were not provided a four level decrease for your role.  Instead, you were given only a two level decrease for the role and the offense.  Therefore, the calculations provided by the Court are correct and your sentence was within the appropriate levels.

      Within the next several days, you will receive a copy of the Judgment Order which will clearly articulate this calculation.  In an attempt to verify this information, I contacted Judge Copenhaver's law clerk and confirmed that you were given a two level decrease and not a four level decrease.  I ask that you please articulate this to your family, so that they also have this information.

(Attachment to # 224).

Nowhere in these documents does Defendant state that he wanted Mr. Giatras to file an appeal concerning those issues.  Based upon the evidence of record, Defendant did not, at any time following his receipt of the August 25 letter from Mr. Giatras, specifically request that an appeal be taken.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Defendant's counsel was not constitutionally ineffective for failing to file a Notice of Appeal.  Furthermore, because Defendant did not appeal his conviction and sentence, the undersigned proposes that the presiding District Judge **FIND** that Defendant has procedurally defaulted on the substantive claims raised in his section 2255 motion.

Accordingly, unless Defendant can show cause and prejudice for his appellate default, or actual innocence, he is barred from pursuing his claims for collateral relief.  See Bousley v. United States, 523 U.S. 614, 622 (1998); see also United States v. Pregent, 190 F.3d 279, 284 n.5 (4th Cir. 1999).  A defendant must demonstrate factual innocence, not merely the legal insufficiency of his conviction or sentence.  Bousley, 523 U.S. at 623-24.

Generally, "cause" refers to "some objective factor external to the defense [that] impeded counsel's efforts" to raise the issue on appeal.  Strickler v. Greene, 527 U.S. 263, 283 n.24 (1999)(quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  As discussed above, Defendant's counsel did not fail to file a requested appeal.  Thus, Defendant cannot assert that reason as cause for his procedural default.

The undersigned proposes that the presiding District Judge **FIND** that Defendant has not raised any objective factor that can serve as cause for his failure to raise these issues on appeal.  Thus, there is no need to address the prejudice prong.  The undersigned further proposes that the presiding District Judge **FIND** that Defendant is foreclosed from any collateral relief due to his procedural default.

Notwithstanding the procedural default, Defendant's claims for collateral relief lack merit.  Should the presiding District Judge find that Defendant can overcome his procedural default, the

11

undersigned will briefly address the merits of each claim.

**B.   Involuntary or Unknowing Plea.**

In Grounds One and Two of his motion, Defendant contends that his guilty plea should be treated as involuntary or unknowing on the basis that his appointed counsel, J.C. Powell, misinformed him about the potential range of punishments that could be applicable. Specifically, Defendant states:

> The Defendant was advised by counsel that [by] signing plea of guilt[y,] government would drop relevant conduct and be sentenced on actual action and role of offense. During Rule 11 hearing changes to plea agreement were made at last minute to increase low end of Guide [sic; Guideline] range.  If known of changes Defendant would have gone to trial.

(# 205 at 4, Ground One).  Defendant further contends that his counsel coerced him into pleading guilty, stating:

> During Rule 11 hearing Defendant was coerced by counsel, J.C. Powell, into agreeing to terms for Honorable Judge John T. Copenhaver Jr. to accept nothing less than a plea of guilt[y].   Leading the Defendant with rapid-fire questions and coaxing Defendant into favorable answers to the court.

(<u>Id.</u>, Ground Two).

The Response of the United States asserts that Defendant is also claiming that the District Court pressured him into accepting the guilty plea.  (# 222 at 5).  The undersigned does not read Defendant's motion to make such an allegation.  Furthermore, Defendant's counsel stated that Defendant was not making such a claim at the hearing on the motion to withdraw the plea:

> THE COURT:      . . . When was he coerced?   He is
>                 certainly not suggesting the Court
>                 coerced him.
>
> MR. GIATRAS:    No, Your Honor, he is not suggesting the
>                 Court coerced.

(# 222, Ex. A at 6-7).

In its Response, the United States contends that any issues concerning the voluntariness of Defendant's plea were addressed and resolved by the District Court during the hearing on Defendant's motion to withdraw the guilty plea, which was denied.  (# 222 at 5).

There is no absolute right to withdraw a guilty plea.  When a defendant moves to withdraw a guilty plea prior to sentencing, a district court "may permit the plea to be withdrawn if the defendant shows any fair and just reason."  Fed. R. Crim. P. 32(e)(emphasis added).  However, where the guilty plea proceeding was appropriately conducted, there is a strong presumption that a guilty plea is final and binding, and the defendant bears the burden of showing that a fair and just reason supports his request to withdraw his plea.  United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000).  This is a difficult burden to overcome, especially when the proceedings are conducted under oath.  "If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding."  United States v. Lambey 974 F.2d 1389, 1394 (4th Cir.

1992)(en banc).

A district court considers a number of factors in determining whether a defendant attempting to withdraw a plea has met his or her burden.  These factors include: (1) whether the defendant has offered credible evidence that his plea was not knowing and voluntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay in between the entry of the plea and the filing of the motion to withdraw; (4) whether the defendant has had close assistance of competent counsel; (5) whether withdrawal will cause prejudice to the United States; and (6) whether it would inconvenience the court and waste judicial resources.  United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991).  In exercising its discretion not to grant withdrawal of Defendant's plea, the District Court considered each of these factors.

Defendant's counsel made arguments similar to those made in Defendant's section 2255 motion at the hearing on his motion to withdraw his guilty plea.  At the conclusion of the hearing, the District Court found as follows:

> The Court accordingly finds that there was a three and a half month delay from the time of the entry of the plea of guilty to the time when the defendant chose to file his motion to withdraw his plea of guilty, which the Court further finds was prompted solely because of the recommendations made in the presentence report which the Court has earlier outlined.

> The Court further finds that the defendant has not provided credible evidence that his plea was not knowing

14

> or voluntary . . . . The Court accordingly finds that the
> defendant has not credibly asserted his legal innocence
> in this instance; that, rather, the defendant had the
> assistance of competent counsel in the person of Mr.
> Powell when he entered the plea of guilty and did so of
> his own volition, knowingly, intelligently, and as
> already indicated voluntarily.

(# 222, Ex. A at 43-44).

Prior to the entry of his guilty plea, Defendant was advised

of the nature of the charge to which he was pleading guilty, that

there was a mandatory minimum of five years of imprisonment on that

charge, and that the maximum statutory penalty was 40 years. (# 91

at 12-17, 23-24). Defendant was further advised by the Court as

follows:

> Q. In determining what that guideline range is, a
> number of factors are taken into account, and they
> include such things as your role in the offense to
> which you've pled guilty, your criminal history,
> whether you've accepted responsibility for your
> misconduct, whether you've obstructed justice in
> any way, whether you are a career criminal, and a
> number of other factors, and among those other
> factors is that of relevant conduct.
>
> By relevant conduct is meant conduct that can be
> said to be part of the same scheme or pattern of
> conduct as that charged in the count to which
> you've pled guilty, or that can be said to be part
> of the same course of conduct as that charged in
> the count to which you've pled guilty. The
> important thing about it then is this. If you've
> engaged in other drug trafficking activities in
> addition to that set forth in the count to which
> you've pled guilty, then to the extent that those
> drug trafficking activities fall within the
> definition of relevant conduct as I've given it to
> you, the quantity of drugs involved in that other
> activity can be added to the quantity of drugs
> involved in the count to which you've pled guilty,
> and as the quantity of drugs go up, so too do the

15

> sentencing guidelines tend to produce a harsher
> sentence.

(Id. at 41-42).   Defendant answered that he understood this explanation as it related to his case.  (Id. at 42).   Thus, he was aware of the consequences of his plea and the potential penalties.

Based upon a thorough review of the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that his guilty plea was not knowing and voluntary.

**C.   Denial of Right against Self-incrimination.**

In Ground Three of his motion, Defendant states as follows:

> At a grand jury testimony given by Defendant,
> without appointed counsel, six months before indictment
> of charge[,] strong evidence was compiled against and by
> the Defendant.  Counsel should have been available to
> advise Defendant of rights and understanding of
> consequences.

(# 205 at 4, Ground Three).   At sentencing, the District Court found that Defendant testified falsely during the grand jury proceeding.  (# 222, Ex. B at 54-55).  Defendant asserts that the giving of his grand jury testimony, without the appointment and advice of counsel, violated his Fifth Amendment right against self-incrimination.

The United States asserts that "it is regular and routine practice in the Southern District of West Virginia for a potential witness before the grand jury to be warned in advance of the potential for self-incrimination," and that "Defendant could have

16

then asserted his Fifth Amendment privilege but he chose not to do so." (# 222 at 6-7). The United States further emphasizes that Defendant was not entitled to have an attorney present in the grand jury room. (Id. at 7).

The United States contends that "Defendant's failure to seek the advice of counsel[,] or to testify truthfully before the grand jury, cannot be characterized as a violation of his rights" and that, by pleading guilty, Defendant waived any and all antecedent non-jurisdictional errors, including any alleged defects in the grand jury proceedings. See Hall v. McKenzie, 575 F.2d 481 (4th Cir. 1978) and Tollet v. Henderson, 411 U.S. 258 (1973) (# 222 at 7).

There is no right to counsel for witnesses appearing before a grand jury. See In re Groban, 352 U.S. 330, 333 (1957); United States v. Daniels, 461 F.2d 1076, 1077 (5th Cir. 1972). Furthermore, Defendant testified at his own peril. Thus, the undersigned District Judge **FIND** that Defendant has not demonstrated a violation of his federal constitutional rights based upon this claim.

**D.  Criminal History Computation.**

Based upon the amendment to Ground Four of his motion, Defendant is contending that his criminal history was over-represented by the fact that he received a two-point increase, because the instant offense occurred while he was on probation for

17

a State offense, for which he received one criminal history point. (# 224 at 1).  Defendant asserts that he should have been eligible for the Safety Valve provided in USSG § 5C1.2.  (# 205 at 5; # 224 at 1).

The United States again asserts that this claim is foreclosed by Defendant's failure to pursue a direct appeal.  See United States v. Frady, 456 U.S. 152 (1982)(# 222 at 7; # 235 at 6-7). The United States further asserts that the computation of Defendant's Criminal History Category was appropriate under the Guidelines.  (# 222 at 7-8).  The undersigned agrees.

The District Court appropriately applied one criminal history point for Defendant's conviction for failure to pay child support, despite the fact that Defendant served no incarceration on that conviction.  See USSG §§ 4A1.1(c), 4A1.2(a)(3) and 4A1.2(c). Additionally, the two-point enhancement that Defendant received for committing the instant offense while on probation for another offense was appropriately applied under USSG § 4A1.1(d). Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant's criminal history was not over-represented, and that Defendant is not entitled to any relief on this claim.

**E.   Role in the Offense.**

Defendant's amended motion further claims that the District Court improperly applied USSG § 3B1.2.  (# 224 at 2).  Section

3B1.2 provides for a two-level reduction in offense level if the defendant played a minor role in the offense, and a four-level reduction if the defendant played a minimal role in the offense. The decision as to whether a defendant qualifies for a minor or minimal role adjustment is within the sound discretion of the trial court.  See, e.g., United States v. Rodriquez De Varon, 175 F.3d 930 (11th Cir. 1999).  In the instant case, the court found that Defendant played a minor role in the conspiracy and, accordingly, gave Defendant a two-level reduction.  (# 222, Ex. B at 57). Defendant now claims that he was entitled to a four-level reduction.  (# 224 at 2).

Application Note 4 to USSG § 3B1.2 states that the four-level reduction "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group" and that the "downward adjustment for a minimal participant will be used infrequently."  Here, the court found that Defendant was "not only less culpable than most other individuals in the conspiracy, but substantially less culpable than others.  His role is more on par with that of Mr. Thomas and Ms. Kidd.  The Court concludes that Mr. Conner is entitled to a minor role in the offense category and as a consequence a two-level reduction."  (# 222, Ex. B at 57).

The PSR had recommended no reduction for role in the offense. A review of the record indicates that Mr. Thomas received a two-level reduction in offense level for having a minor role in the

conspiracy, and Ms. Kidd, whom the Court found to be the least culpable of all of the defendants, received a three-level reduction.   No one involved in this conspiracy received a four-level reduction.

The court concluded that:

> [T]he defendant's role in the conspiracy was to supply his name in the acquisition of automobiles used by the conspirators, both while they were in Charleston and traveling to and from Philadelphia in particular to obtain and distribute crack.   The defendant, in an arrangement with Mr. Browne and Mr. Gordon, acquired automobiles on sixteen occasions by rental from Enterprise, and acquired motel rooms on fourteen occasions for the particular use of Mr. Browne and Mr. Gordon and others who were engaged with them, such as Mr. Sampson and Mr. Marshall.   The defendant received in exchange from Mr. Browne and Mr. Gordon crack cocaine.

(# 222, Ex. B at 54).

Based upon the District Court's discretionary findings, the undersigned proposes that the presiding District Judge **FIND** that the Defendant's role in the offense was minor, but not minimal, and that USSG § 3B1.2 was properly applied.

**F.   Application of _Blakely_ and _Booker_.**

Defendant's case has concluded direct review and is final. Thus _Booker_ does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review. Several circuit courts of appeals have ruled that _Booker_ does not apply retroactively to persons whose convictions were final prior to the Supreme Court deciding _Blakely v. Washington_, 124 S. Ct. 2531 (2004) and _Booker_.

20

The Circuit Court of Appeals for the Seventh Circuit has ruled that <u>Booker</u> does not apply retroactively to cases on collateral review.  <u>McReynolds v. United States</u>, ___ F.3d ___, 2005 WL 237642, No. 04-2520 (7th Cir. Feb. 2, 2005).  The Court held:

> Although the Supreme Court did not address the retroactivity question in *Booker*, its decision in *Schriro v. Summerlin*, ____ U.S. _____, 124 S. Ct. 2519, 159 L. Ed.2d 442 (2004), is all but conclusive on the point. *Summerlin* held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed.2d 556 (2002) -- which, like *Booker*, applied *Apprendi*'s principles to a particular subject -- is not retroactive on collateral review.
>
> *Ring* held, in reliance on *Apprendi*, that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. In *Summerlin* the Court concluded that *Ring* cannot be treated as a new substantive rule -- which is to say, a rule that "alters the range of conduct or the class of persons that the law punishes." ___ U.S. ___, 124 S. Ct. at 2523. It observed that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Ibid.* That is no less true of *Booker* -- or for that matter *Apprendi* itself. We held in *Curtis v. United States*, 294 F.3d 841, 843 (7th Cir. 2002), that *Apprendi* does not apply retroactively on collateral review, because it "is concerned with the identity of the decisionmaker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful." That, too, is equally true of *Booker*. No conduct that was forbidden before *Booker* is permitted today; no maximum available sentence has been reduced.
>
> The remedial portion of *Booker* drives the point home. The Court held that the federal Sentencing Guidelines remain in force as written, although 18 U.S.C. § 3553(b)(1), which makes their application mandatory, no longer governs. District judges must continue to follow their approach *as guidelines*, with appellate review to determine whether that task has been carried out

reasonably.  No primary conduct has been made lawful, and none of the many factors that affect sentences under the Sentencing Guidelines has been declared invalid. Consequently, *Booker*, like *Apprendi* and *Ring*, must be treated as a procedural decision for purposes of retroactivity analysis.

* * *  The Court held in *DeStefano v. Woods*, 392 U.S. 631, and reiterated in *Summerlin*, that the choice between judges and juries as factfinders does not make such a fundamental difference; to the contrary, the Court stated in *Summerlin*, it is not clear which is more accurate. ___ U.S. at ___, 124 S. Ct. at 2525.  What is more, *Booker* does not in the end move any decision from judge to jury, or change the burden of persuasion.  The remedial portion of *Booker* held that decisions about sentencing facts will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application.  As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system.  That is not a "watershed" change that fundamentally improves the accuracy of the criminal process.  *See also Curtis*, 294 F.3d at 843-44.

We conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005.  That date, rather than June 24, 2004, on which *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004), came down, is the appropriate dividing line.

2005 WL 237642, *2.

The Second Circuit has decided <u>Green v. United States</u>, ___ F.3d ___, No. 04-6564, 2005 WL 237204 (2d Cir. Feb. 2, 2005), which held that neither <u>Booker</u> nor <u>Blakely</u> applies retroactively to a collateral challenge.  Similarly, the Eleventh Circuit decided, in <u>Varela v. United States</u>, ___ F.3d ___, No. 04-11725, 2005 WL 367095 *4 (11th Cir. Feb. 17, 2005), "that <u>Booker</u>'s constitutional rule

22

falls squarely under the category of new rules of criminal procedure that do not apply retroactively to a § 2255 on collateral review." The Sixth Circuit ruled in <u>Humphress v. United States</u>, ___ F.3d ___, No. 03-5951 (6th Cir. Feb. 25, 2005) that:

> We see no basis for concluding that the judicial factfinding addressed in *Booker* is either less accurate or creates a greater risk of punishing conduct the law does not reach than did the judicial factfinding addressed in *Ring*. The Supreme Court has never held that a new rule of criminal procedure falls within *Teague*'s second exception. *Beard [v. Banks]*, 124 S. Ct. [2504], 2513-14 [(2004)]. We hold that *Booker*'s rule does not either.

A similar conclusion was reached in <u>Rucker v. United States</u>, 2005 WL 331336, No. 2:04-cv-00914PGC (D. Utah, Feb. 10, 2005). Stacy Rucker pled guilty to armed bank robbery in July, 2003, with sentencing in October, 2003, before both <u>Blakely</u> and <u>Booker</u>. His offense level was enhanced for property taken from a financial institution, discharge of a firearm, and loss exceeding $10,000, and reduced for acceptance of responsibility. He filed a Motion under 28 U.S.C. § 2255, asserting that <u>Blakely</u> (and <u>Booker</u>) should be applied retroactively to him, and that his sentence was unconstitutional. The District Court held:

> The approach to sentencing required by the *Blakely* and *Booker* decisions is a new rule. Moreover, it is a procedural rule about the allocation of fact-finding power between judge and jury and about proof beyond a reasonable doubt. Such a new procedural rule applies retroactively only where it implicates the fundamental fairness and accuracy of a criminal proceeding. The *Blakely/Booker* rule does not implicate fundamental fairness. Indeed, *Booker* itself requires the courts to continue to "consider" the Guidelines in imposing

sentence.  Accordingly, the *Blakely/Booker* rule does not apply retroactively to Mr. Rucker (and others whose convictions became final before *Blakely*).

<u>Rucker v. United States</u>, 2005 WL 331336, *1.

Based on <u>McReynolds</u>, <u>Green</u>, <u>Valera</u>, <u>Humphress</u>, and <u>Rucker</u>, the undersigned proposes that the presiding District Judge **FIND** that Defendant is not entitled to collateral relief under <u>Blakely</u> and <u>Booker</u>.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's amended section 2255 motion (## 205, 224, 239), and dismiss this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of

24

this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Ronald Conner, and counsel of record.

|  |  |
|---|---|
| ___March 2, 2005___ | _Mary E. Stanley_ |
| Date | Mary E. Stanley |
|  | United States Magistrate Judge |